UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JUAN PEREZ,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SOUTH COLLEGE OF TENNESSEE, INC.;<br>and THEODOR RICHARDSON, in his<br>capacity as Chief Academic Officer,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Case No.:<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Plaintiff Juan Perez requests a temporary restraining order and preliminary injunctive relief against Defendant South College of Tennessee, Inc. ("South College") on the basis that South College has dismissed him from school in contravention of his rights under the student handbook and without the full benefit of the appeals process set forth therein. This unwarranted action and irregular process has caused irreparable harm to Mr. Perez's education and professional career goals, as well as reputational harm for which no adequate legal remedy exists.

### FACTUAL BACKGROUND

This action stems from Mr. Perez's dismissal from the Masters of Health Science in Physician Assistant Studies program (the "PA Program") at South College. Mr. Perez began the PA Program on October 4, 2021. (Para. 15).[1] It consists of a five-quarter didactic phase and a 12-month clinical phase. (Para. 16). Mr. Perez completed the didactic phase in December 2022 and has only the one-year clinical phase remaining. (Para. 17). To become a physician assistant, he will then have to take and pass the Physician Assistant National Certifying Exam ("PANCE") and

---

[1] All paragraph references herein are to Mr. Perez's Verified Complaint filed on January 18, 2023.

apply for state licensure. (Paras. 11-12). However, before doing so, he must graduate from the PA Program. (Para. 13). To date, he has incurred loans exceeding $140,000 to pay for his education and living expenses while studying. (Para. 5).

Though Mr. Perez has struggled at times with test taking, he has scored well above average on graded oral and clinical activities. (Para. 18). South College evaluates PA Program participants on a four-point scale. (Para. 19). The Master of Health Science Physician Assistant Program Student Handbook (the "Handbook") requires completion of "all didactic courses with a minimum cumulative GPA of 3.0 in order to proceed to the clinical learning phase of the program." (Para. 20). In addition, rigorous rules apply to students whose cumulative GPA falls below 3.0:

> A student with a cumulative GPA below 3.0 at the end of any didactic quarter or clinical rotation will receive notification from the Student Progress Committee that they are on Probation. If the student fails to raise his/her cumulative GPA to 3.0 or higher at the end of the next didactic quarter or clinical rotation, he/she will be dismissed from the Physician Assistant Studies Program. If the student raises his/her cumulative GPA to 3.0 or higher at the end of the next didactic quarter or clinical rotation, he/she will be removed from probation. If a student's cumulative GPA falls below 3.0 a second time, he/she will be dismissed from the Physician Assistant Studies Program.

(Para. 20).

After third quarter, Mr. Perez's cumulative average fell to 2.96 and South College placed him on academic probation. (Para. 21). Because Mr. Perez failed to raise his cumulative average in his fourth quarter, South College dismissed him from the PA Program in September 2022; however, after an appeal in which Mr. Perez explained the mitigating circumstances related to his mental health, South College allowed him to return for a fifth quarter. (Para. 22). Fifth quarter was Mr. Perez's best quarter at South College; he earned a 3.14 GPA, which raised his cumulative average to 2.97, but South College deemed this insufficient and has dismissed him again from the PA Program, $140,000 in debt and with no degree. (Para. 23).

## STANDARD OF REVIEW

An application for injunctive relief is addressed to the sound discretion of the trial justice. See *Holland v. Dole*, 591 F. Supp. 983, 985 (M.D. Tenn. 1984).

## DISCUSSION

In order to obtain a preliminary injunction, the "burden of proof is on the plaintiff to establish: (1) that the plaintiff has a strong or substantial likelihood or probability of success on the merits; (2) that the plaintiff will suffer irreparable injury without injunctive relief; (3) that the issuance of a preliminary injunction would not cause substantial injury to others; and (4) that granting the plaintiff's request for preliminary injunctive relief would serve the public interest." *Id.* The following addresses each of these elements in detail.

I. <u>Mr. Perez has shown a reasonable likelihood of success in demonstrating the College's breach of contract because the Handbook constitutes an education contract and South College violated multiple provisions therein.</u>

"While plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits, they 'need not show a certainty of success.'" *League of Women Voters of N.C.* v. *North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); see also *Holland*, 591 F. Supp. at 989 ("the plaintiff must present a prima facie case"). Mr. Perez may meet his burden by proffering evidence that, if believed, would support each element of his claim. The "basic elements of a breach of contract case under Tennessee law must include (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." *Life Care Centers of Am., Inc. v. Charles Town Assocs. Ltd. P'ship,* 79 F.3d 496, 514 (6th Cir. 1996).

  A. *Mr. Perez's relationship with South College is expressly contractual per the PA Program Handbook.*

Numerous jurisdictions, including the Sixth Circuit when applying Tennessee law, have stated that the relationship between student and university is contractual in nature. See *Evans v.*

*Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 892 (M.D. Tenn. 2022). In this instance, Mr. Perez's Handbook expressly refers to itself on page 99 in large, bold-face type as the "Physician Assistant Student Contract," though it contradictorily states on page 2 that it "is not to be interpreted as a legal document or contract." The disclaimer, however, matters little because even when a handbook provides that it is not a contract, its provisions may still be enforced as an implied contract. *Id*. at 892-93 ("Courts have regularly found from a school publication an implied contract between a school and a student, even when that publication contains disclaimer language").

Here, South College provided the Handbook to Mr. Perez as part of its admissions packet. (Para. 25). As an enrolled member of the South College community, the Handbook sets forth Mr. Perez's rights and explains the requirements for continuing in the PA Program. (Paras. 20, 26). Mr. Perez accepted the Handbook, enrolled in the PA Program, and paid tuition. (Paras. 15, 25). The College accepted Mr. Perez's tuition payments and enrolled him in classes. (Para. 15). This exchange of consideration created an enforceable contract between the parties on the bases of the Handbook.

> B. *Mr. Perez has a prima facie claim for breach of contract because South College added a decimal place to his GPA when determining his cumulative average and failed to afford him the full three-step appeals process promised in the Handbook.*

As a member of the South College community, Mr. Perez reasonably expected that South College and he were equally bound by the Handbook. (Para. 27). The College guaranteed Mr. Perez certain contractual rights by way of the Handbook. (Para. 26). In pertinent part, pages 2 and 99 of the Handbook promise that South College's discretion to terminate a student's enrollment will be limited to instances where there exists "cause as indicated herein." (Para. 26). Dismissal of a student, therefore, must be in accordance with the terms of the Handbook, and the Handbook is to be interpreted under the standard of "reasonable expectation – what meaning the

party making the manifestation, the university, should reasonably expect the other party to give it." *Id.* at 892, quoting *Lyons v. Salve Regina Coll.,* 565 F.2d 200, 202 (1st Cir. 1977); see also *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 709 (1st Cir. 2022) (holding that "a student's expectation can be reasonable even if the precise expectation is not stated explicitly in the contract's language but, instead, when the student's expectation, viewed objectively alongside the express terms of the contract, is based on the student's fair interpretation of the contract's provisions").

In regard to the termination of Mr. Perez's enrollment in the PA Program, the Handbook provides that students may proceed to the clinical phase if they have "a minimum cumulative GPA of 3.0." (Para. 28). In fact, all references in the Handbook to a student's minimum cumulative average present the minimum as a single-place decimal number, i.e., 3.0 rather than 3.00, and the only reference to a two-place decimal, i.e., 3.00, is on page 34 and is in reference to a course grade rather than a cumulative average. (Paras. 29-30). Moreover, the Handbook indicates via a chart on page 34 that South College applies standard decimal-rounding rules by showing that the letter grade "A" is applied for scores of 89.50% and higher, whereas 79.50% to 89.49% constitutes a "B" letter grade. (Para. 31). Therefore, because Mr. Perez's cumulative average at the end of his fifth quarter was 2.97, when converted to a single-place decimal, 2.97 becomes 3.0. (Para. 32). South College, however, breached Mr. Perez's contractual rights and the duty of good faith and fair dealing by adding a decimal place to Mr. Perez's cumulative average when determining whether he earned the right to continue in the PA Program, i.e., it left his cumulative average as a 2.97 rather than convert it to 3.0, contrary to Mr. Perez's fair and reasonable expectations. (Para. 33).

In addition to the foregoing, subsequent to his dismissal, Mr. Perez invoked South College's appeals process. The Handbook outlines a three-step process to appeal a dismissal.

(Para. 36). "Step 1" is an appeal within the PA Program whereby the student presents his or her arguments to the Associate Program Director and Program Director. (Para. 37). "Step 2" is an appeal to the Dean of Academic and Student Services or Appeals Committee. (Para. 38). "Step 3" is an appeal to the Chief Academic Officer, whose decision is final. (Para. 39).

On December 16, 2022, Mr. Perez presented his "Step 1" appeal within the PA Program, which was denied by the Associate Program Director and the Program Director on December 21 and 27, 2022, respectively. (Para. 40). On December 29, 2022, Mr. Perez presented his "Step 2" appeal to the Dean of Academic and Student Services, who referred the matter to the Appeals Committee for decision. (Para. 41). But, while awaiting the result of the "Step 2" appeal, Mr. Perez received the following email on January 9, 2023, from Chief Academic Officer Theodor Richardson:

> Dear Mr. Javier Penzo:
>
> In an email message dated December 29, 2022, you indicated that you wished to appeal your recent dismissal from the South College Knoxville Physician Assistant program.
>
> I have reviewed all documentation presented to me related to the appeal, including the letters of academic dismissal, your appeal and documentation, the committee decision and resultant letter to you based on the appeal, and your final appeal to me. You were previously granted an extension for an additional quarter beyond policy to meet the required 3.0 GPA to advance after failing to meet the minimum GPA requirement for three consecutive quarters, which you were not successful in meeting.
>
> After reviewing this information, unfortunately, I did not find any basis to support overturning the dismissal based on the academic progression requirements in the Progression Policy for the Knoxville Physician Assistant program.
>
> Sincerely,
> Theodor Richardson, PhD, Chief Academic Officer

(Para. 42).

At the time Mr. Perez received this email, he had yet to receive the "Step 2" decision or

submit a "Step 3" appeal, which is the only step of the process in which the Handbook permits Mr. Richardson's involvement. (Paras. 43-44). In fact, he did not receive word on the result of "Step 2" until two days later, along with a notice that he had three business days to make a final appeal to Mr. Richardson. (Para. 48). Meanwhile, before the time for appeal had elapsed, South College changed Mr. Perez's student status to "inactive" and unregistered him for clinical rotations and volunteer hours. (Para. 48). Mr. Perez nonetheless filed the "Step 3" appeal on January 15, 2023. (Para. 49). But, Mr. Richardson replied the next day reminding Mr. Perez that he had already denied his appeal on January 9, 2023, which quite plainly, was before the conclusion of "Step 2." (Para. 49).

In light of the foregoing, South College calculated Mr. Perez's GPA in a manner inconsistent with that outlined in the Handbook and failed to afford Mr. Perez the three-step sequential appeals process the Handbook promises. These arbitrary actions fly in the face of Mr. Perez's reasonable expectations, constitute multiple breaches of South College's contractual obligations, and damaged Mr. Perez's educational and career prospects. Based on the foregoing, there is a reasonable likelihood that Mr. Perez's breach of contract claims will meet success.

II.     <u>Mr. Perez will suffer irreparable harm if injunctive relief is not granted because his damages are in the nature of lost time and opportunities and a tarnished reputation.</u>

Monetary damages will not adequately compensate Mr. Perez for the cascade of consequences that will flow from his dismissal. This is because physician assistant programs, including that at South College, do not accept or allow the transfer of credit from one school to another, and typically will not grant admission to a student who has been dismissed from a physician assistant program at another school. (Para. 14). For this reason, Mr. Perez faces not only the significant loss of time and disruption to his ability to pursue his academic program in an

ordinary and timely manner, but the complete loss of both that opportunity and his ability to pursue his professional goals.

The foregoing loss of time, opportunities, and reputational harm are well recognized as irreparable. See, e,g., *Elmore v. Bellarmine Univ.*, 2018 WL 1542140, at 7 (W.D. Ky. Mar. 29, 2018) (finding irreparable harm because "probation would damage Elmore's academic and professional reputations and may affect his ability to enroll at other institutions"); *Doe v. Pa. State Univ.*, 276 F. Supp. 3d 300, 314 (M.D. Pa. Aug. 18, 2017) ("Doe's ensuing gap, or delay, in completion of the program would constitute irreparable harm"); *Doe v. Univ. of Notre Dame*, 2017 WL 1836939, at 12 (N.D. Ind. May 8, 2017) ("The questions the gap raises, and the explanation it requires, are potentially damaging to John in a manner not compensable by money damages"), vacated at parties' request, 2017 WL 7661416 (N.D. Ind. Dec. 27, 2017); *Doe v. Middlebury Coll.*, 2015 WL 5488109, at 3 (D. Vt. Sept. 16, 2015) (finding that "money damages cannot compensate for . . . the delay in the completion of his degree, or the opportunity to begin his career in July 2016 with this particular employment"); *King v. DePauw Univ.*, 2014 WL 4197507, at *13 (S.D. Ind. 2014) (finding that "inevitable" need to explain gap on record to future employers or graduate school admissions committees would result in irreparable harm); *Coulter v. E. Stroudsburg Univ.*, 2010 WL 1816632, at 3 (M.D. Pa. May 5, 2010) (finding irreparable harm on account of delay in plaintiff's "completion of her degree and her eventual graduation . . . this is time and progress that she will not ever be able to retrieve"); *Doe v. Texas A&M Univ.-Kingsville*, No. 2:21-cv-00257 (S.D. Tex. Nov. 5, 2021), ECF No. 18 ("Defendant suggested that monetary damages would be sufficient, but could not articulate how they could compensate for the lost semester, much less the complete loss of an opportunity for education"); *Doe v. Pa. State Univ.*, No. 4:15-cv-02072 (M.D. Pa. Oct. 28, 2015) ECF No. 12 (counting "the deprivation of [Doe's] right to continue his education

in an ordinary and timely manner" among his irreparable harm), vacated as moot, No. 4:15-cv-02072 (M.D. Pa. Apr. 4, 2016), ECF No. 49. Therefore, the cascade of consequences that will flow from Mr. Perez's dismissal are precisely the type of irreparable injury for which an injunction is appropriate since monetary damages would be inadequate to compensate him.

III. <u>The balance of equities tilts to Mr. Perez because South College will suffer no harm if relief is granted.</u>

Against the clear threat of irreparable harm to Mr. Perez, very little is balanced on the other side of the scale. The Handbook indicates clearly and repeatedly that a cumulative average is to be calculated as a single decimal number and spells out in detail an orderly and sequential appeals process, neither of which South College observed in regard to Mr. Perez. These rights and procedures – it must be said – retain value only so long as the parties respect and adhere to them. So, there can be little doubt that South College breached Mr. Perez's contractual rights, and now proposes to leave him $140,000 in debt and with no degree. And, though in the academic context, "judicial intervention in any form should be undertaken only with the greatest reluctance," *Evans*, 589 F. Supp. 3d at 893, this controversy is not about whether South College shall be required to confer a degree on Mr. Perez. It is simply about whether he will be allowed to continue working toward that goal. Even if he is successful and ultimately obtains his degree from South College, he will still have to pass the PANCE and obtain state licensure before he may commence practice. (Para. 12). The school's imprimatur, in other words, only serves to allow Mr. Perez to take another test. For these reasons, at stake for South College is little more than indiscriminate freedom of action, a freedom it expressly contracted away. The cost to South College will therefore be little, and nothing more nor less than what it bargained for.

IV.  **Injunctive relief is in the public interest because it will maintain the status quo and the public interest favors the upholding of contractual rights.**

This court possesses broad discretion to take provisional steps restoring the status quo pending the conclusion of a trial. See *Blaylock v. Cheker Oil Co.,* 547 F.2d 962, 965 (6th Cir. 1976), see also *King v. Elrod*, 196 Tenn. 378, 384 (1953) ("In granting any injunction whether prohibitory or mandatory it is in the exercise of a sound judicial discretion"). The status quo is defined as the "last, actual, peaceable, non-contested status which preceded the pending controversy . . . It has also been said that the status quo to be preserved is the status necessary to prevent the dissipation or destruction of the res in controversy or one where neither party is subject to damage." *Memphis Retail Invs. v. Baddour,* 1988 WL 82940, at 2 (Tenn. Ct. App. Aug. 10, 1988), quoting 43 C.J.S. Injunctions § 17: see also *Collins v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 859590, at 10 (M.D. Tenn. Feb. 14, 2012) ("The purpose of a temporary restraining order is to preserve the status quo – the last peaceable, non-contested status that preceded the controversy"). In cases where students contest suspension or expulsion, numerous courts have found that entering a preliminary injunction to permit a student to remain a student does not alter the status quo, because the last peaceable status was prior to imposition of the discipline. See, e.g., *Doe v. Pa. State Univ.*, 276 F. Supp. 3d at 315 n. 107; *Doe v. Rensselaer Polytechnic Inst.*, 2020 WL 6544607, at 5 (N.D.N.Y. 2020); *Madej v. Yale Univ.*, 2020 WL 1614230, at 5 (D. Conn. 2020); *Doe v. Vassar Coll.*, 2019 WL 6222918, at 4 (S.D.N.Y. 2019); *Ritter v. State of Oklahoma*, 2016 WL 2659620, at 2 n. 9 (W.D. Okla. 2016). In this case, the status quo is the status between the parties as of the day before South College dismissed Mr. Perez from the PA Program. In order to serve the public interest in upholding his contractual rights, that status quo ante must be preserved. See *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 860 (W.D. Tex. 2016) ("it is in the public interest to uphold contracts"); *Amedisys, Inc. v. Interim Healthcare of Wichita, Inc.,* 2015 WL

1912308, at 3 (D. Kan. Apr. 27, 2015) ("the public interest is served when courts uphold enforceable contracts").

## CONCLUSION

For the reasons set forth herein, Plaintiff Juan Perez respectfully requests that this Honorable Court restrain and enjoin Defendant South College of Tennessee, Inc. from dismissing him from the Masters of Health Science in Physician Assistant Studies program.

Dated: January 18, 2023

The Plaintiff, Juan Perez,
By his Attorneys,

/s/ Roman Reese
Roman Reese, BPR #028239
Garner & Conner, PLLC
250 High Street, PO Box 5059
Maryville, TN 37802
Tel: (865) 984-1460, Ext. 131
Fax: (865) 984-1753
rreese@garnerconner.com

/s/ J. Richard Ratcliffe*
J. Richard Ratcliffe, #2603
Ratcliffe Harten Galamaga LLP
40 Westminster Street, Suite 700
Providence, RI 02903
Tel: (401) 331-3400
Fax: (401) 331-3440
rratcliffe@rhgllp.com

*Pro Hac Vice admission pending*

## CERTIFICATE OF SERVICE

I, Roman Reese, certify that on January 18, 2023, I filed and served this document via the Electronic Filing System upon all registered counsel of record.

/s/ Roman Reese