UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAVIER PENZO, | ) | |
| | ) | Case No. 3:23-cv-22 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Jill E. McCook |
| SOUTH COLLEGE OF TENNESSEE, | ) | |
| INC. and THEODOR RICHARDSON, in | ) | |
| his capacity as Chief Academic Officer, | ) | |
| | ) | |
| *Defendants*. | | |

**ORDER**

Before the Court are two motions: Plaintiff Javier Penzo's[1] motion to proceed under

---

[1] The Court refers to Plaintiff by his real name, Javier Penzo, because it **DENIES** his motion to proceed under a pseudonym (Doc. 3).

Unless a court determines a plaintiff's "privacy interests substantially outweigh the presumption of open judicial proceedings," a complaint should state the names of all parties. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citation omitted). Factors courts evaluate in making this determination include: (1) whether the plaintiffs requesting anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation requires plaintiffs to disclose an intention to violate the law, thereby opening him up to criminal prosecution; and (4) whether the plaintiffs are children. *Id* (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981)).

Penzo does not argue he is challenging governmental activity, that he is a child (just that he is a "relatively young man"), or that litigating this matter would compel him to admit he intended to commit a crime or to disclose deeply intimate information. (Doc. 3-1, at 3.) Instead, Penzo seeks to proceed under a pseudonym to avoid embarrassment and reputational harm that may stem from disclosing issues related to mental illness. (*Id.* at 1, 3.) Because Penzo's justification is not captured by any of the *Porter* factors, and because courts have declined to grant motions for similarly-situated plaintiffs, the Court will deny the motion. *See, e.g.*, *Doe v. Carson*, Nos. 19-1566/19-1714, 2020 WL 2611189, at *3 (6th Cir. May 6, 2020) (denying a plaintiff's motion to proceed anonymously because she "failed to identify any exceptional circumstances distinguishing her case from other cases brought by plaintiffs claiming disability discrimination who suffer from mental illness").

pseudonym (Doc. 3) and motion for temporary restraining order against Defendants Theodor Richardson and South College of Tennessee, Inc. (collectively, "South College") (Doc. 4). For the reasons that follow, the Court will **DENY** both motions.

I.  BACKGROUND

Plaintiff Javier Penzo was a student in South College of Tennessee, Inc.'s physician-assistant program until he was dismissed for insufficient academic performance in January 2023. (Doc. 1, at 1.)

South College requires its physician-assistant-program students to maintain a grade point average ("GPA") of at least 3.0 to remain in the program. (*Id.* at 3.) This requirement and the consequences for failing to meet it are explained as follows in the South College Master of Health Science Physician Assistant Program Student Handbook ("Handbook"):

> A student with a cumulative GPA below 3.0 at the end of any didactic quarter or clinical rotation will receive notification from the Student Progress Committee that they are on Probation. If the student fails to raise his/her cumulative GPA to 3.0 or higher at the end of the next didactic quarter or clinical rotation, he/she will be dismissed from the Physician Assistant Studies Program. If the student raises his/her cumulative GPA to 3.0 or higher at the end of the next didactic quarter or clinical rotation, he/she will be removed from probation. If a student's cumulative GPA falls below 3.0 for a second time, he/she will be dismissed from the Physician Assistant Studies Program.

(*Id.*) Students facing dismissal for failing to meet the 3.0 minimum GPA requirement are entitled to a three-step appeals process, which is also laid out by the Handbook. (*Id.* at 5.)

The first step involves an appeal to the Associate Program Director and Program Director of the physician-assistant program. (Doc. 4-1, at 6.) A student may choose to appeal the step-one decision to the Dean of Academic and Student Services or to the Appeals Committee, which

---

The Court will also point out that Plaintiff included Penzo's real name in both the complaint and temporary-restraining-order motion filed. (Doc. 1, at 6; Doc. 4-1, at 6.)

is step two of the process. (*Id.*) The final step is to appeal the step-two decision to the Chief Academic Officer, a position currently held by Defendant Dr. Theodor Richardson. (*Id.* at 2, 6.) Dr. Richardson serves as the ultimate, step-three decision-maker on student dismissals resulting from insufficient academic performance; his decision on such matters is final. (*Id.* at 6; Doc. 1, at 2.)

After three quarters in the physician-assistant program, Penzo's cumulative GPA fell to a 2.96. (Doc. 1, at 4.) In accordance with the Handbook, South College placed Penzo on academic probation and advised him that he would be dismissed if he could not raise his cumulative GPA to at least a 3.0 by the end of the next quarter. (*Id.* at 4.) Because Penzo was unable to do so, he was dismissed for the first time from the program after completing his fourth quarter. (*Id.*)

Penzo, however, successfully appealed his dismissal, attributing his underperformance to mental-health difficulties, and was allowed to return to the program for his fifth quarter. (*Id.*; Doc. 4-1, at 2.) Though Penzo earned a 3.14 the next quarter, his cumulative GPA remained below 3.0 at a 2.97. (*Id.*) As a result, South College again dismissed Penzo from the program, leaving him with "$140,000 in debt and [] no degree." (Doc. 4-1, at 2.)

Penzo appealed his dismissal a second time. (*Id.* at 5–6.) On December 21, 2022, Penzo presented his step-one appeal to the Associate Program Director and the Program Director. (*Id.* at 6.) After his step-one appeal was denied, Penzo emailed Dr. Richardson—the step-three decision-maker—and Dr. Chase—a step-two decision-maker—requesting that he proceed in the appeals process. (*Id.*)

On January 5, 2023, the Appeals Committee held a hearing during which Penzo presented his case. (Doc. 16, at 15.) That same day, the Appeals Committee voted to deny

Penzo's appeal and notified him of the decision over the phone. (*Id.*) Penzo received a formal letter of the Appeals Committee's decision on January 11, 2023. (*Id.*)

On January 9, 2023—after the Appeals Committee orally communicated its decision to Penzo but before Penzo received the letter—Dr. Richardson sent Penzo an e-mail denying his step-three appeal. (Doc. 4-1, at 6.) In the e-mail, Dr. Richardson stated he interpreted Penzo's December 29, 2022, e-mail as a desire to engage in step three of the appeals process. (*Id.*) Dr. Richardson also represented in the e-mail that his denial was based on his "review[] of all documentation presented to [him] related to the appeal . . . ." (*Id.*) In a declaration, Dr. Richardson informed the Court that he "do[es] not hold any hearings or consider any additional evidence pursuant to the . . . Handbook. The materials [he] reviewed were the same materials Plaintiff submitted to the Appeals Committee for Step 2 of the appeal process." (Doc. 16-1, at 7.) On January 15, 2023, Penzo again e-mailed Dr. Richardson, requesting to proceed to the final step of the appeals process. (Doc. 4-1, at 7.) Dr. Richardson informed Penzo that he had already exhausted the process and that the decision was final. (*Id.*)

Penzo initiated this action on January 18, 2023, alleging South College breached its implied contract with him by failing to round his 2.97 cumulative GPA to a 3.0 and by failing to follow its appeals process as set forth in the Handbook. (Doc. 1., at 4–7.) Penzo also asserts a claim under the Americans with Disabilities Act ("ADA"). (*Id*. at 8–10.) Penzo simultaneously moved for a temporary-restraining order, requesting that the Court immediately reinstate Penzo into South College's physician-assistant program. (Doc. 4). South College filed a response on January 25, 2023, and the Court held a virtual hearing on the motion on January 26, 2023.

## II. STANDARD OF REVIEW

The purpose of a temporary restraining order ("TRO") is to preserve and maintain the status quo for a very short period of time "so that a reasoned resolution of a dispute may be had." *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996).

When reviewing motions for TROs, courts consider the following: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting the injunction. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Am. Imaging Svcs., Inc. v. Eagle-Picher Indus.*, Inc., 963 F.2d 855, 858 (6th Cir. 1992)); *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008) ("The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions."). These considerations are factors to be balanced; they are not prerequisites that must each be satisfied before relief may issue. *Eagle-Picher*, 963 F.2d at 859. Nor are they "rigid and unbending requirements"; rather, "[t]hese factors simply guide the discretion of the court." *Id*. The party seeking injunctive relief bears the burden of justifying such relief. *Id*.

## III. ANALYSIS

Penzo moves this Court to issue a temporary restraining order requiring South College to reinstate him into its physician-assistant program because, he argues, South College breached its implied contract with him by dismissing him from the program without the full benefit of the dismissal-appeals process and based on dismissal criteria different than what is provided in the South College student handbook. (Doc. 4-1, at 3–7.)

Under Tennessee law, a breach-of-contract claim requires satisfaction of three elements:

"1) the existence of an enforceable contract; 2) nonperformance amounting to a breach of the contract; and 3) damages caused by the breach of the contract." *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 254 (6th Cir. 2005) (citation omitted). The parties do not dispute that the handbook constitutes a contract, and "[c]ourts have regularly found from a school publication an implied contract between a school and a student, even when that publication contains disclaimer language." *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 892–93 (M.D. Tenn. 2022) (citation omitted). Though the Tennessee Supreme Court has not identified a standard to apply to interpret terms when a dispute arises out of a university-student relationship, the Sixth Circuit has predicted that it would apply a deferential standard of "reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988) (quoting *Lyons v. Salve Regina Coll.*, 565 F.2d 200, 202 (1st Cir. 1977)). A school breaches the contract when it fails to substantially comply with its own rules or procedures. *Anderson v. Vanderbilt Univ.*, No. 3-09-0095, 2010 WL 2196599, at *13 (M.D. Tenn. May 27, 2010), *aff'd* 450 F. App'x 500, 502 (6th Cir. 2011).

Courts tend to afford more deference to university decisions predicated on academic rather than disciplinary criteria.[2] *Atria*, 142 F. App'x at 255. This is particularly true when the decision involves "degree requirements in the health care field." *Doherty*, 862 F.2d at 576. "Generally, a court should not disturb a university's academic decisions unless the university

---

[2] South College argues its decision to dismiss Penzo based on his failure to meet the program's GPA requirement was an academic decision deserving of substantial deference from the Court. (Doc. 16, at 13.) Though the Court is inclined to agree that the decision was based on academic rather than disciplinary criteria, the degree of deference the Court affords South College's decision is not outcome-determinative; the Court independently finds Penzo is unlikely to succeed on his breach-of-contract claims.

acted in an arbitrary and capricious manner." *Sifuna v. S. Coll. Of Tenn., Inc.*, No. 3:14-cv-515, 2017 WL 2062878, at *5 (E.D. Tenn. May 12, 2017). A university acts in an arbitrary and capricious manner when there is "no rational basis for the university's decision or that the decision was motivated by bad faith or ill will unrelated to academic performance." *Id.* (citing *Stevens v. Hunt*, 646 F.2d 1168, 1169 (6th Cir. 1981)).

### A. Likelihood of Success on the Merits

Because the Court finds Penzo is unlikely to succeed on either breach-of-contract claim, it finds this factor weighs against granting the TRO motion.[3]

#### i. *Whether South College Reasonably Expected Students to Understand the Minimum Cumulative GPA Requirement Was Not Rounded Up*

It is unlikely South College reasonably expected students to understand the 3.0 requirement to be a rounded cumulative GPA (i.e., that a 2.95 GPA and above would meet the 3.0 GPA requirement) rather than a hard cutoff. The Handbook clearly states probation or dismissal is warranted "[i]f a student's cumulative GPA falls below a 3.0." (Doc. 4-1, at 2.) There are no qualifiers or caveats modifying this statement. Students' cumulative GPAs are calculated to the hundredth's place; indeed, Penzo invariably refers to his cumulative GPAs with two decimal places. (*See, e.g.*, Doc. 4-1, at 2 (Penzo stating his "cumulative average fell to 2.96" after the third quarter).) If that number is under 3.0, per the unequivocal terms of the Handbook,

---

[3] The Court acknowledges that injunctive relief may be inappropriate for breach-of-contract claims, and this may serve as an additional basis to find Penzo's claims unlikely to succeed on the merits. *See, e.g.*, *Doe v. Rhodes Coll.*, No. 2:16-cv-2308, 2016 WL 11611619, at *8 (W.D. Tenn. Oct. 25, 2016) (denying injunctive relief requested by a plaintiff bringing a breach-of-contract claim after being expelled for academic misconduct because "[t]he default remedy for a breach of contract under Tennessee law is monetary damages" rather than injunctive relief).

the student is subject to probation or dismissal. It is not reasonable to believe otherwise.[4] The Handbook, as Penzo points out, contains a chart suggesting grades awarded *within individual courses* may be rounded up (i.e., a grade of 89.5% constitutes an "A"). (*Id.* at 5.) But there is no reference to rounding or any adjustment of *cumulative* GPAs in determining whether a student has met the 3.0 GPA requirement. Accordingly, Penzo's likelihood of success on this breach-of-contract argument is low and weighs against granting temporary relief.

        *ii.*        *Whether South College Substantially Complied with its Appeals Process*

The record suggests South College substantially complied with the three-step appeals process it set forth in its student handbook. Penzo does not appear to dispute that he was verbally notified of the step-two appeal decision prior to receiving Dr. Richardson's email denying his step-three appeal. After receiving his step-one decision, Penzo emailed Dr. Richardson—a step-three decision-maker—requesting to proceed with his appeal. (Doc. 16-1, at 128.) Though the step-two decision letter had not arrived before Dr. Richardson's step-three denial email, Penzo knew of the decision, intended to proceed to step three of the appeal, and could not have submitted any other materials for Dr. Richardson's review. (*See id.* at 7 (Dr. Richardson representing that, pursuant to the Handbook, he "do[es] not hold any hearings or consider any additional evidence [in making his decision]").) Though Dr. Richardson's denial ideally would have arrived after Penzo had received his formal step-two decision letter and explicitly requested to proceed to step three, the relevant standard is "substantial compliance," not "perfect compliance." *Anderson*, 2010 WL 2196599, at *13. Penzo also has not sufficiently

---

[4] Though this standard is objective, the facts of this case strongly suggest Penzo himself understood the 3.0 cutoff to be inflexible. Despite twice exhausting South College's three-step appeals process following his dismissals for insufficient academic performance, Penzo never once argued his GPA should be rounded up. It is only in this litigation that Penzo advances this argument.

8
Case 3:23-cv-00022-TRM-JEM   Document 19   Filed 01/27/23   Page 8 of 9   PageID #: 289

identified how South College's "imperfect" adherence to its appeals process harmed him, if at all. Accordingly, the Court finds Penzo is unlikely to succeed on this claim, militating against granting a TRO.

### B. Remaining Factors

The remaining factors also weigh against granting Penzo immediate injunctive relief. A determination that Penzo did not meet the academic standards of South College does not amount to irreparable harm; the cases Penzo cites in arguing to the contrary deal with non-academic proceedings, mostly in which the student was accused of sexual misconduct. Additionally, granting the TRO would risk undermining higher-learning institutions' ability to set and enforce academic standards for its students—a decision which courts have acknowledged is better left to an institution's professional judgment, especially in the context of the health-care field. *See Doherty*, 862 F.2d at 576. Collectively, the factors strongly advise against granting Penzo immediate relief.

## IV. CONCLUSION

Finding no factor favors granting Penzo's TRO motion, the Court will **DENY** it (Doc. 4). The Court also **DENIES** Penzo's motion to proceed under pseudonym (Doc. 3) for the reasons stated above.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**